UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DERREL L. THOMAS,

        Plaintiff,

                        Case No.: 8:07-cv-1902-T-33EAJ

v.

HERNANDO COUNTY HOUSING AUTHORITY,
HERNANDO COUNTY HOUSING
AUTHORITY BOARD OF COUNTY
COMMISSIONERS, DONALD SINGER,
LINDA STACK, AND LEE ANNE PHILLIPS,

        Defendants.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to
Plaintiff Derrel L. Thomas' pro se Motion for Summary
Judgment (Doc. # 61), which was filed on August 6, 2008.
Defendants filed their Memorandum of Law in Opposition to
Plaintiff's Motion for Summary Judgment (Doc. # 67), on
August 25, 2008.  In addition, Defendants filed their Motion
for Summary Judgment on August 18, 2008. (Doc. # 65).
Defendants filed the affidavit of Donald Singer and numerous
exhibits in support of their motion for summary judgment.
(Doc. # 66). Plaintiff failed to file a response in

-1-

opposition to Defendants' motion for summary judgment, and the time for Plaintiff to do so has expired.  For the reasons that follow, this Court denies Plaintiff's motion for summary judgment and grants Defendants' motion for summary judgment.

I.   **Background**

A.   **Plaintiff's Section 8 Voucher**

Plaintiff received welfare benefits in the form of rental assistance via a Section 8 Housing Choice Voucher (the "Voucher") provided by the Hernando County Housing Authority (the "Authority").

Defendant Donald Singer is the Executive Director of the Authority. (Doc. # 65 at ¶ 4).  Defendant Linda Stack is a Section 8 Housing Counselor for the Authority. (<u>Id.</u> at ¶ 5).   Defendant Lee Anne Phillips is a Family Self-Sufficiency Coordinator for the Authority. (<u>Id.</u> at ¶ 6). Defendant Hernando County Housing Authority Board of Commissioners (the "Board") is the Authority's governing body. (<u>Id.</u> at ¶ 7).

The Board terminated Plaintiff's Voucher at an August 22, 2007, informal hearing. (Doc. # 66 at ¶ 6).  Prior to the termination of Plaintiff's Voucher, Plaintiff received

-2-

$396 per month in rental assistance. (<u>Id.</u> at ¶ 7). Plaintiff resided at 460 Hale Avenue, Apt. #23, Brooksville, Florida, 34601 (the "Subsidized Unit"). (<u>Id.</u>). Plaintiff's rent at the Subsidized Unit was $515. Accordingly, Plaintiff was responsible for paying his landlord $119 in monthly rent on top of the $396 provided by his Voucher. (<u>Id.</u>).

According to Singer, Plaintiff's Voucher was terminated because Plaintiff failed to comply with the rules and regulations governing receipt of such Voucher. Specifically, Plaintiff permitted guests (his girlfriend Precious Washington and her five children) to live with him without providing notification to the Authority. (<u>Id.</u> at ¶ 10). In addition, Plaintiff moved out of the Subsidized Unit on July 19, 2007, without first providing notice to the Authority or the landlord. (<u>Id.</u>).

On July 27, 2007, the Authority sent a letter to Plaintiff notifying him that his Voucher was terminated. (<u>Id.</u> at ¶¶ 8-12). However, the letter also explained that the termination was not final and was subject to Plaintiff's right to request a hearing and to oppose and contest the termination of the Voucher. (<u>Id.</u>). Among other things, the

-3-

July 27, 2007, letter specified:

> The Hernando County Housing Authority has received
> written documentation that you have allowed
> additional persons to reside in your rental unit
> without written notification to this housing
> agency. Specifically, noted was a Precious
> Washington and her children who have reportedly
> been residing with you for the last 5-6 months.
> We know that you are familiar with the regulations
> of your lease and with your obligations as a
> Section 8 tenant as you were verbally warned in
> April 2006 when it was suspected that your nephew
> AJ was living with you and again reminded during
> your annual re-certification interview in February
> 2007. In addition, we have received notice from
> your apartment complex that you have moved out of
> your subsidized unit on July 19, 2007, without
> prior written notice to this agency.

(Doc. # 66-2). The July 27, 2007, letter cited the
regulations upon which the termination decision was based,
and outlined the process Plaintiff could undertake in the
instance that Plaintiff disputed the termination of his
Voucher. Specifically, the letter explained:

> The rules and regulations of the Section 8 Housing
> Choice Voucher Program provides [sic] that you may
> request a hearing with the Housing Authority's
> Board of Commissioners regarding your termination.
> During this hearing, you may either represent
> yourself or may have legal council [sic] represent
> you at your own expense. If you choose to request
> a hearing, you must submit this request in writing
> to the Housing Authority within ten (10) business
> days from the date of this notice. Once the
> Housing Authority receives this written request,
> you will be notified of the hearing date. The
> Housing Authority's Board of Commissioners will
> regulate and conduct the hearing.

-4-

(Doc. # 66-3).

Plaintiff opted to contest the termination of his Voucher. On July 27, 2007, he sent a letter to the Authority explaining "I, Derrel L. Thomas request a hearing with the Housing Authority's Board of Commission regarding my termination. I'll represent myself." (Doc. # 66-4).

Thereafter, on August 2, 2007, the Authority sent Plaintiff a letter indicating that a hearing was set for Wednesday, August 22, 2007, at 4:00 p.m., "regarding the termination of your Section 8 Housing Choice Voucher program assistance." (Doc. # 66-5).

The Board conducted the hearing with Plaintiff as noticed on August 22, 2007, at 4:00 p.m. The hearing was recorded and transcribed. This Court has taken the time to watch the DVD of the entire August 22, 2007, informal hearing. This Court has also reviewed the transcript of the informal hearing. (Doc. # 66-5).

**B.   <u>August 22, 2007, Informal Hearing</u>**

During the August 22, 2007, meeting, the Board terminated both Washington's Section 8 Voucher (Doc. # 66-5

at 12) and Plaintiff's Voucher. (Doc. # 66-5 at 17).[1]   The
Board also recommended that both Washington and Plaintiff be
investigated by the Hernando County Sheriff's Department,
presumably for welfare fraud. (<u>Id.</u>).

As enumerated by Singer in his affidavit, the Board
considered the following documentary evidence during the
informal hearing with respect to Plaintiff's Voucher:

(1)   Hernando County Housing Authority "Application for
       Section 8 Assistance" dated July 9, 2007, and executed
       by Plaintiff on July 9, 2007 (Doc. # 66-7);

(2)   Hernando County Housing Authority "Application for
       Section 8 Assistance" dated and executed by Plaintiff
       on December 21, 2006 (Doc. # 66-8);

(3)   Voucher # E79703, issued December 14, 2005 (Doc. # 66-
       9);

(4)   Voucher # E79703, issued on February 14, 2007 (Doc. #
       66-10);

(5)   Housing Assistance Payments Contract Amendment Notice

---

[1] Precious Washington initiated a suit similar to the present
one on October 19, 2007. (8-07-cv-1901-T-24-MSS).   Her suit was
administratively closed on March 6, 2008.  On October 31, 2008, the
mediator notified the Court that Washington settled her case
against Defendants.

(Doc. # 66-11);

(6) Hernando County Housing Authority "Important Notice" executed by Plaintiff on July 16, 2007 (Doc. # 66-12);

(7) Hernando County Housing Authority "Important Notice" executed by Plaintiff on December 21, 2006 (Doc. # 66-13);

(8) Hernando County Housing Authority "Important Notice" executed by Plaintiff on March 28, 2005 (Doc. # 66-14);

(9) July 17, 2007, notice prepared and singed by Plaintiff (Doc. # 66-15);

(10) July 1, 2007, notice prepared and signed by Plaintiff (Doc. # 66-16);

(11) July 20, 2007, Oak Park Apartments "Security Deposit: Request for Refund/Closing Statement" (Doc. # 66-17);

(12) July 5, 2007, correspondence from Donnamaria Lopez (Community Manager, Oak Park Apartments) to Linda Stack (Doc. # 66-18);

(13) April 7, 2006, "Seven Day Notice" from Oak Park Apartments to Plaintiff (Doc. # 66-19); and

(14) Oak Park Apartments "Renewal of Lease" executed by Plaintiff on March 9, 2006 (Doc. # 66-20).

The Board also considered the testimony of Plaintiff

-7-

and Linda Stack.

During the informal hearing, the Board referred to and relied upon the June 5, 2007, letter written by Donnamaria Lopez, the "Community Manager" of Oak Park Apartments. (Doc. # 66-18).  In her letter, Lopez states:

> This letter is in reference to Derrell Thomas, Sr. who resides at: 460 Hale Avenue, Apt. 23, Brooksville, Florida 34601.  At this time, Ms. Precious Washington and her children including the new recently born child has been residing in the apartment with Mr. Thomas for approximately 5-6 months until today.  If you have any questions or need additional information, please do not hesitate to contract me at (***) ***-****.[2]

(Doc. # 66-18).

Plaintiff objected to the Board's reliance on hearsay evidence. (Id.).  Furthermore, Plaintiff testified:

> I spoke with Mr. Singer, sir, concerning this issue, and he told me that it was fine, that's the reason I turned in my voucher, he said that me and Ms. Washington was able to live together if one of us turned in our voucher.  If you would look in your folder, you would see that I sent a letter to Mr. Singer doing exactly what he asked me to do. I would have never made this move unless I got permission from him to do so.  He told me that both of us could not live in the same house under two (2) vouchers.  He said one of us had to turn in a voucher, and I decided to turn in my voucher. Me and Mr. Singer had this conversation on the

---

[2] This Court has redacted Lopez's phone number to protect her privacy rights.

    16th of July, and you can see in the file that I
    turned that in.

(Doc. # 66-5 at 13-14).

   During the August 22, 2007, informal hearing, the Board
had before it a letter signed by both Plaintiff and
Washington on July 17, 2007, stating, "I Derrel L. Thomas
will voluntarily turn in my voucher and be added as a co-
head of household with Precious N. Washington.  We have four
children together and want to raise them in one household
together, this will take effect on August 1, 2007."  (Doc. #
66-15).

   During the hearing, Plaintiff did not deny that
Washington and the children were living in his Subsidized
Unit.  Instead, he complained that the proverbial deck was
stacked against him, and that he was not treated fairly.
The Board gave him an opportunity to refute the evidence
against him, but Plaintiff did not prevail.  The Board
terminated Plaintiff's Voucher during the August 22, 2007
informal hearing, and sent Plaintiff a formal notice on
August 23, 2007, explaining the reasons for the termination.
(Doc. # 66-6).  This suit followed.

  **C.** **Plaintiff's Complaint**

   On October 19, 2007, Plaintiff filed his pro se

-9-

complaint against Defendants alleging that Defendants violated the Americans with Disabilities Act, the Fourteenth Amendment to the United States Constitution, and other provisions of the United States Constitution and the Constitution of the State of Florida. (Doc. # 1).   On October 23, 2007, Richard A. Lazzara, United States District Judge, (formerly assigned to this case), dismissed Plaintiff's complaint in conjunction with the denial of Plaintiff's request to proceed in forma pauperis. (Doc. # 3). On October 30, 2007, Plaintiff filed a motion for reconsideration requesting that his action against Defendants be reinstated. (Doc. # 5).   On October 31, 2007, Judge Lazzara denied Plaintiff's motion for reconsideration (Doc. # 6), but then entered a separate order vacating his order denying the motion for reconsideration. (Doc. # 7). Judge Lazzara determined that Plaintiff should be afforded the opportunity to amend his complaint. (Doc. # 7).

On November 7, 2007, Plaintiff filed his amended complaint. (Doc. # 8).   Plaintiff thereafter amended his complaint on November 14, 2007, (the second amended complaint) (Doc. # 11) and again amended his complaint on November 29, 2007, (the third amended complaint). (Doc. #

-10-

15).  The third amended complaint is the operative complaint in this suit.

On January 23, 2008, Defendants filed their motion to dismiss or, in the alternative, motion for a more definite statement. (Doc. # 28).  Defendants asserted, among other things, that Plaintiff's third amended complaint was "so utterly vague and ambiguous that it cannot warrant a substantive response." (Doc. # 28 at 3).  On January 29, 2008, Judge Lazzara denied Defendants' motion to dismiss, noting:

> After reading Plaintiff's complaint in a liberal
> fashion, this Court cannot conclude that Plaintiff
> can prove no set of facts in support of his claim
> which would entitle him to relief.  Plaintiff must
> be given the opportunity to attempt to prove his
> claims on the merits.  Although the complaint may
> be inartfully drafted, the Court had little
> problem in arriving at the foregoing summation of
> Plaintiff's claims and allegations and, thus, the
> Court is convinced that Defendants will be able to
> frame a responsive pleading.

 (Doc. # 32 at 3).

The third amended complaint contains nine "claims of relief," which this Court will construe as counts.  In count one, Plaintiff asserts that Defendants terminated his Voucher before holding a hearing in violation of the Fourteenth Amendment to the United States Constitution, as

well as "the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 12).

In count two, Plaintiff asserts that Defendants "had Plaintiff unlawfully arrested for fraud" in violation of the "Fourth, Fifth, and the Fourteenth Amendment to the United States Constitution and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 13).

In count three, Plaintiff asserts that the Board denied Plaintiff a fair hearing in violation of the "Sixth and Fourteenth Amendments to the United States Constitution, and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 14).

In count four, Plaintiff alleges that the Board denied Plaintiff the opportunity to confront adverse witnesses at the hearing in violation of "the Sixth and Fourteenth Amendments to the United States Constitution and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 15).

In count five, Plaintiff alleges that Defendants "in

-12-

concert did not consider the effects on other family members" in violation of "the Sixth, Eighth, and Fourteenth Amendment to the United States Constitution, and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 16).

In count six, Plaintiff asserts that Singer, Stack, and Phillips, "all in concert conspired and retaliated against Plaintiff, because Plaintiff was outspoken about the local government and the treatment of African Americans and the racial segregation in the Hernando County Housing" in violation of "the First Amendment to the United States Constitution, and the Florida Constitution, and the Civil Rights Act of 1963, ADA, Federal Register, HUD Administrative Plan, and the Fair Housin [sic] Act." (Doc. # 15 at ¶ 17).

In count seven, Plaintiff reiterates his accusation that Singer improperly terminated Plaintiff's Voucher prior to an evidentiary hearing in violation of "the Fourteenth Amendment to the United States Constitution and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 18).

In count eight, Plaintiff asserts that Stack was

Plaintiff's case worker, and that she failed to notify Plaintiff "of any complaints of any kind, and never mention [that] Plaintiff's eligibility was in jeopardy" in violation of "the Fourteenth Amendment to the United States Constitution and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 19).

In count nine, Plaintiff asserts that Phillips introduced false and misleading evidence into the record in violation of "the Sixth and Fourteenth Amendment to the United States Constitution, and the Florida Constitution, HUD Administrative Plan, Federal Register, ADA, and the Fair Housing Act." (Doc. # 15 at ¶ 20).

Plaintiff requests that his Voucher be reinstated immediately, and also seeks punitive damages and attorney's fees.

Both Plaintiff and Defendants seek summary judgment.

## II.  Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

-14-

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories,

-15-

and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

## III. **Analysis**

Plaintiff's motion for summary judgment, filed without

-16-

the assistance of counsel, does not discuss the specific counts asserted in the third amended complaint and does not provide this Court with the information and arguments necessary to support Plaintiff's contentions.  In addition, Plaintiff has not submitted any affidavits in this case. After considering Plaintiff's submissions carefully and liberally, the Court concludes that Plaintiff has not substantiated the allegations of the third amended complaint.

For example, while Plaintiff appears to assert a claim under the ADA, Plaintiff has failed to allege that the termination of his Voucher was related in any way to his alleged disability, and the record contains no evidence in support of such a claim.  In construing pro se motions, this Court must employ leniency, however, this Court should not and will not buttress legally insufficient claims. Plaintiff's ADA claim, utterly unsupported by the record, is emblematic of Plaintiff's claims.  Equally abysmal is Plaintiff's assertion that Defendants violated his Sixth Amendment rights, as the record does not and cannot support a violation of any provision of the Sixth Amendment, which generally protects the rights of the accused in a criminal

-17-

case.[3]

Plaintiff fails to demonstrate that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law as to any of his claims.  Thus, Plaintiff's motion for summary judgment is denied.  After due consideration and for the reasons that follow, the Court grants summary judgment in favor of Defendants.

### A.   Termination of the Voucher

While Plaintiff's complaint contains a bounty of claims apparently asserted under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Florida Constitution, the Fair Housing Act, the ADA, and other laws, this Court determines that the only claims which can be supported by the record are Plaintiff's claims related to the termination of his Voucher.  This Court will discuss the termination of his Voucher under the rubric of Goldberg v. Kelly, 397 U.S. 254 (1970) and Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008).

In Goldberg, the Supreme Court established the minimal

---

[3] In addition, Plaintiff asserts that Defendants violated his First Amendment rights; however, Defendant has not provided any factual support for such an allegation.  The same is true for Plaintiff's random and unsupported assertion that Defendants violated his Eighth Amendment rights.

requirements for due process in the termination of public assistance as follows: (1) timely and adequate notice giving reasons for termination; (2) opportunity to appear at the hearing and to present evidence and question witnesses; (3) the right to representation by counsel; (4) the right to an impartial decision maker; (5) the right to have the decision based on rules of law and the evidence presented at the hearing; and (6) the right to a written decision by the decision maker outlining the reasons for the decision. Goldberg, 397 U.S. at 267-271.  The Court explained, "the pre-termination hearing has one function only: to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." Id. at 267.

In Basco v. Machin, the Eleventh Circuit applied the Goldberg standard to the termination of a Section 8 Voucher and explained:

> [T]he Supreme Court held [in Goldberg] that the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated.  The Supreme Court reasoned that the interests of the recipients in the uninterrupted provision of benefits and of the State in not

> wrongly terminating benefits outweighed the State's competing interest in summary adjudication. This reasoning applies with equal force to public housing assistance provided pursuant to Section 8, where eligible participants rely on subsidies to meet their basic need for housing.

Basco, 514 F.3d at 1182 (internal citations omitted).

In Basco, the Eleventh Circuit reviewed a district court's decision to grant summary judgment in favor of the defendants (the Director of Section 8 Housing of Hillsborough County, Florida and the Administrator of Hillsborough County, Florida) in a Section 8 housing subsidy termination case involving an allegedly unauthorized resident. Id. at 1184. The Eleventh Circuit reversed the district court's decision, explaining that Section 8 participants are allowed to have house guests, and that "the PHA [Public Housing Agency] bears the burden of persuasion at an informal administrative hearing" to show that an individual was an unauthorized person residing at the subsidized housing unit, rather than an authorized house guest. Id. at 1178, 1184.[4]

---

[4] The Eleventh Circuit explained, "HUD regulations prohibit the presence of an unauthorized resident in assisted units, but do not prohibit a participant from having house guests." Basco, 514 F.3d at 1179 (citing 24 C.F.R. § 982.551(h)(2)).

-20-

In <u>Basco</u>, as in the present case, the Section 8 participant's voucher was terminated after an informal hearing.  The Eleventh Circuit summarized the circumstances in <u>Basco</u> as follows:

> [A]n anonymous person who identified himself as a neighbor of Ms. Basco telephoned the PHA to provide information regarding disturbances at Ms. Basco's assisted unit, multiple police calls to the unit, and the arrest of a member of Ms. Basco's household.  The PHA assigned the matter to Section 8 Housing Counselor Sarah J. Matalon, who obtained from the Tampa Police Department copies of two police reports involving Ms. Basco's assisted unit.  The first report, dated February 28, 2005, stated that Joseph Basco gave a sworn statement to the police indicating that his stepdaughter had run away with a man named "Emanuel Jones," "Who's staying at the house." The alleged sworn statement was not contained or attached to the report.  The February report further noted that Mr. Basco said he called Emanuel's stepfather to come and collect Emanuel's belongings.  The report noted that Emanuel's address was the same as that of Ms. Basco's unit. The second report, dated July 18, 2005, lists "Elonzel Jones" as an eyewitness to an alleged battery on Mr. Basco by his stepdaughter, and listed Elonzel's address as that of the assisted unit.
>
> Based on these two police reports, Section 8 Senior Housing Counselor Sherry Hanson sent Ms. Basco a Notice of Intent to Terminate along with copies of the reports.  The termination notice advised Ms. Basco that the PHA intended to terminate her housing assistance based on the presence of an unauthorized resident in her unit in violation of 24 C.F.R. § 982.551 and .516. Although not expressly stated, the implication from the notice was that the PHA believed that Elonzel Jones and Emanuel Jones were the same

person; that "Jones" had been living in Ms.
Basco's assisted unit between February and July
2005; that this totaled more than fifteen days;
and that Jones was therefore an "unauthorized
resident". . . .

In response to the termination notice, Ms.
Basco requested a hearing. . . . At the hearing
and on behalf of the PHA, Matalon presented, as
the only evidence, copies of the February and July
police reports she had obtained. In her defense,
both Ms. Basco and her landlord testified that
Jones did not live at the assisted unit. Ms.
Basco also submitted a December 7, 2005 notarized
letter from Jones's mother stating that Jones had
only ever lived at two addresses, neither of which
was Ms. Basco's. To rebut the alleged statement
by Mr. Basco contained in the February 2005 police
report, Ms. Basco asked to have her husband
directly testify by telephone. The Hearing
Officer denied the request and upheld the PHA's
decision to terminate Ms. Basco's benefits,
stating: "Mrs. Basco could not provide information
regarding [the] unauthorized resident. Mr. Basco
gave a statement to police that states that Mr.
Jones stay [sic] in assist [sic] unit. Landlord
who is also Mrs. Basco [sic] mother became upset
and demand [sic] extra time to gather more
information (records on Mr. Jones). Her request
were [sic] denied. Decision upheld.

Id. at 1179-1180.

In Basco, the defendants failed to present sufficient

evidence to make a prima facie showing that Jones was an

unauthorized resident, rather than an authorized house guest

at the Basco family's unit. The evidence upon which the

defendants relied to terminate Ms. Basco's voucher hinged on

an assumption -- that Emanuel Jones and Elonzel Jones are

-22-

the same person -- and no evidence was presented to support
the assumption or to support that Jones resided at the unit.
Rather, Ms. Basco as well as her landlord testified that
Jones did not reside at the Basco family's unit.   In
addition, Ms. Basco tendered as evidence a notarized letter
from Jones' mother indicating that Jones did not reside at
the Basco family's unit. Furthermore, Ms. Basco attempted to
have her husband testify via telephone with respect to the
police report; however, the defendants did not permit Mr.
Basco to testify via phone (Mr. Basco was at home caring for
a disabled child at the time of the hearing).

Ms. Basco appealed the termination of the voucher on
the administrative level, and she submitted additional
evidence.   She tendered an affidavit of Emanuel Jones
stating that he did not reside at the Basco family's unit.
The administrative appeal was not successful.   Accordingly,
Ms. Basco filed suit in district court.   The district court
upheld the termination of Ms. Basco's voucher granting
summary judgment in favor of defendants.   As noted, the
Eleventh Circuit reversed and commented: "The PHA bears the
burden of persuasion at an informal administrative hearing
held pursuant to HUD regulations to determine whether a

-23-

Section 8 participant's housing subsidy should be terminated. . . . [W]e further find that the Hearing Officer erred in this case in relying upon legally insufficient evidence to terminate Ms. Basco's Section 8 assistance." <u>Id.</u> at 1184.

The present case can be distinguished from <u>Basco</u> in a number of important respects. Unlike the facts in <u>Basco</u>, there is direct evidence in this case tending to show that Thomas permitted unauthorized individuals to reside in his Subsidized Unit and that he terminated his lease without prior approval. Further, the record reflects that Thomas has yet to deny that Washington and her children resided at the Subsidized Unit. In addition, Thomas wrote the Board on July 17, 2007, indicating that he voluntarily forfeited his Voucher effective August 1, 2007. (Doc. # 66-15).

Further, Mr. Thomas abandoned the Subsidized Unit without giving a full 30 day's notice to the Authority and his landlord. (Plaintiff notified the Authority of his intent to vacate the Subsidized Unit on July 1, 2007, and vacated the Subsidized Unit on July 19, 2007). (Doc. # 66-16, 66-17). The evidence before the Board did not require an inference or assumption to reach the conclusion that

-24-

Thomas violated regulations for receipt of rental assistance and voluntarily forfeited his Voucher.

In addition, the record in the present case does not reflect that Thomas attempted to offer evidence or testimony which was rejected by the Board (as in the <u>Basco</u> case where Mr. Basco was not permitted to offer testimony via phone). Plaintiff was given prior notice of the hearing and was aware of his right to offer evidence in support of his eligibility to participate in the Section 8 program. Plaintiff simply failed to come forward with evidence to rebut the evidence before the Board at the time of the informal hearing.

This Court recognizes that "the rules of evidence are not strictly applied in administrative hearings;" however, the Court is also cognizant that "there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence." <u>Basco</u>, at 514 F.3d at 1182; <u>see</u> <u>generally</u>, <u>Goldberg</u>, 397 U.S. at 262-263 ("Relevant constitutional restraints apply as much to withdrawal of public assistance benefits as to disqualification for unemployment compensation").

The Board considered both hearsay and non-hearsay

-25-

evidence in reaching its decision to terminate Plaintiff's Voucher. The hearsay evidence that the Board did consider, particularly the letter from Lopez, was consistent with the non-hearsay evidence before the Board including numerous business records of the Board, the Authority, and Oak Park Apartments, and was reasonably reliable and probative. As to Lopez, this Court acknowledges that she was Plaintiff's landlord; however, the Court has no reason to believe that she has an interest in the result of this case. Further, if Thomas disagreed with her statements, he could have attempted to subpoena her. The present record does not reflect that Plaintiff attempted to garner her testimony or the testimony of any other witnesses, for that matter.

Accordingly, upon due consideration of the entire record, and viewing the evidence in a light most favorable to Plaintiff when considering Defendants' motion for summary judgment, this Court determines that Defendants met their burden of persuasion and had sufficient evidence to support their decision to terminate Plaintiff's Voucher. As aptly stated by Defendants, "[T]he indisputable evidence supports that Plaintiff received a full and fair hearing prior to the termination of his Section 8 benefits." (Doc. # 65 at 13).

As required by <u>Goldberg</u>, Plaintiff was provided with timely and adequate notice that his Voucher was going to be terminated, Plaintiff was provided with an opportunity to appear at a hearing and to present evidence and witnesses, Plaintiff was afforded the right to representation by counsel (though he opted to represent himself), the Board, an impartial decision-maker, terminated his Voucher, the decision to terminate his Voucher was based on the rules of law and the evidence presented at the hearing, and the Board expressed their decision to terminate Plaintiff's Voucher in writing.

This Court finds that no material issues of fact remain for trial, and Defendants are entitled to judgment in their favor on all counts of Plaintiff's third amended complaint. Accordingly, this Court grants Defendants' motion for summary judgment.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Derrel L. Thomas' pro se Motion for Summary Judgment (Doc. # 61) is **DENIED.**

(2)   Defendants' Motion for Summary Judgment (Doc. # 65) is **GRANTED.**

-27-

(3)  The  pretrial  conference  scheduled  for  November  10,
     2008,  and  trial  scheduled  for  the  December  2008  term
     are  hereby  cancelled.

(4)  The  Clerk  is  directed  to  enter  judgment  in  favor  of
     Defendants  and  against  Plaintiff  and  to  close  this
     case.

     **DONE**  and  **ORDERED**  in  Chambers  in  Tampa,  Florida,  this
6th  day  of  November  2008.

                              VIRGINIA M. HERNANDEZ COVINGTON
                              UNITED STATES DISTRICT JUDGE


Copies:

All  Counsel  and  Parties  of  Record